I apologize. Thank you, Judge Mendoza. I didn't mean to jump ahead. No need to apologize. It's the habit of the profession. Good morning, distinguished judges. May it please the Court. I am Jerome Bowen of Bowen Law Offices in Las Vegas, Nevada. I'm really pleased to be here. Thank you for having me on behalf of the appellants. I'd like to reserve five minutes, if I could, on rebuttal. Very well. Keep track of your time. Okay. Thank you. This case comes down, essentially, I'm trying to pare it down to two primary issues. First, the applicability of any business risk exclusions to eliminate coverage. And is there an occurrence under the policy sufficient to trigger coverage? The answer to number one. The first one is logically prior. I mean, the second one is logically prior, so maybe we should start there. On the occurrence? Yes. Okay. I'd like to start there. And I think what we need to talk about here is, in my detailed complaint, I have to kindly disagree with the Honorable Judge Mayhem, but in my detailed Second Amendment complaint, I detailed very specifically, in fact, I cited case law that is very applicable to this issue. Specifically, the cases of Vandenberg v. Superior Court and EADS v. Marks. Now, while those are not controlling law, those are all both Supreme Court of California cases. As to why? About what? They're about CGL policies and whether or not a contract, merely arguing that you have a contract, whether or not that disallows coverage for purposes of an occurrence when you have this type of a CGL policy. And both the Vandenberg and EADS cases provide important analysis in holding the applicability of these issues. Specifically, a cause of action may arise out of a negligent manner in which a contractual duties are performed or out of a failure to perform such duties. Those are our facts here. We have a contract. But as the Vandenberg court said, even where a cause of action arises from a breach of contract duty, if it's growing out of the contract, that those duties, it is delecto. In other words, notwithstanding, it involves a breach of contract. In other words, a tort may grow out of or be a coincident with a contract, and the existence of a contractual relationship does not immunize. Here, for example, though, at least a large part of the allegations were that things that were supposed to be painted weren't painted. I mean, they just weren't painted. And other things, there was supposed to be a maintenance contract and nobody ever came. So those things aren't negligence, right? They're simply not fulfilling the contract. Well, and thank you, Judge Berzon. I would say they're both. I would say they could be either because they clearly had duties, and they clearly implemented. You have a combination of things. Nobody has a duty to paint somebody else's house unless you have a contract, right? So if you do it badly, I see your point. But if you don't do it, that doesn't appear to be negligence. You just didn't do it. So there's mixtures here, according to the expert. And I cited that in my second amendment complaint, specifically the expert report, which is key. There's both. They did do painting, and they did it incorrectly, and then they didn't do painting on some areas. So you have a combination, likewise with the wrought iron. So three issues. You have painting, wrought iron, and the stucco. With respect to the wrought iron, some of the wrought iron they worked on, and they did an incomplete job, so they were negligent, and it continued to rust and fall apart, and then they negligent. I'm glad you said it that way, because that was one of the things that I was trying to get at. When was these issues at play? In other words, you allege that there was damage in fungal growth and cracking, but according to the complaint, the fungal growth and cracking was already there. So is that true? Some of it, and then it worsened, and some new stuff grew, according to the expert. So how are we supposed to determine from reading of complaint whether or not the exclusions or whether or not this was actually an issue that could be part of the damages? Well, you look at the expert report. The expert report that I put in the complaint specifically went through every single 122 units, buildings. It went through each one, and I laid that out in the complaint, what he found, and what he specifically stated, which is key, is that there wasn't damage to the work that was performed by UCI. There was damage to another person's property, and that's the key. As soon as there's damage to another person's property from the insured's actions, coverage is triggered. You have an occurrence. Well, you have to have an accident. Correct. Because occurrence, you said occurrence, but occurrence is defined as an accident. An accident has been defined by the Nevada Supreme Court. How is it that if you have the circumstances we have here? I'll deal with just the wrought iron because the wood is comparable. The wrought iron was rusting. They were supposed to clean off the rust and paint it. There was an expectation that there had to be, there was a separate yearly maintenance contract that was to go back, I guess, and find out if rust was continuing or more rust was there. How is the fact that some of it continued to rust or new rust occurred, how is that an accident as opposed to a breach of the maintenance contract, which clearly they breached. The arbitrator found they never did. They never did anything under the maintenance contract. They completely abandoned that contract. How is that an accident? Isn't that exactly what was expected was going to happen, and that's why they had a yearly maintenance contract? Well, the case law, and thank you, Judge Bolton, the case law, and that's a great question,  So that inquiry must come from the standpoint of the insured, and from all the indications of the evidence that was presented at the arbitration was the insured did not expect that. The insured expected that when they worked on the wrought iron, for example, and they were working on the rust and the corrosion and cleaning it, that it would not continue that way, and then they would paint over it and it would be fine. There was nothing wrong with the paint. The paint wasn't incorrect. Their product wasn't incorrect. It's that they caused damage to another person's property, and under these salient cases, which are in my second amended complaint, By doing what? Not doing what they promised to do. Yes, not doing what they promised to do. Correct. But why isn't that just a breach of contract? Because under Vandenberg, it says that you don't just make that inquiry. You look at the nature. Well, you can do it badly again. Or, I mean, if you say I'm going to paint this, and then you use some terrible paint and it doesn't do anything, that's one thing. All right? Maybe, I don't even know if that's an accident, but it's maybe something more than a breach of contract. It's negligence. If you don't do the work, but you're saying that some of the work they did do.  You are correct, gentlemen. What – I said to start with occurrence, but if we were to get by that, we have these very – I can't read these insurance agreements at all. They're completely opaque. I know that you – there are at least two of these exceptions there at issue, right? Right. Do you address those? And I think, Judge Berzon, you're all right. You're all kind of getting to where we are in that it's a mixture. It's a mixture of doing things and not doing things on the three areas, with wood, with wrought iron, and with the stucco. Well, with the stucco. The stucco seems like, honestly, I guess, in some ways, the one you care most about and the hardest from your point of view. Because in fixing – what went wrong with the stucco was the stucco, not something else. Right? With regard to the paint and with regard to the wrought iron, what went wrong was not the work itself, but how it affected the metal and the wood. But with the stucco, what went wrong was the stucco. What went wrong with the stucco, according to the expert and the arbitrator, his decision relied upon this expert and his photographs, which are included in this Second Amendment counterclaim, what went wrong was is that they didn't limit their work. They spread their work and damaged undamaged stucco. So where the stucco was damaged, they didn't just limit their work to that. They went over and damaged previously undamaged stucco. When you say damaged, didn't they just make it look bad because they didn't basically blend it in? Well, that's part of the property damage. Part of the property damage is – But how is that an accident? Well, it is an accident because they didn't intend to do that. You can't say they didn't intend, it wasn't intentional to injure the property. Why isn't it just poor workmanship? Well, it is poor workmanship. But the issue is did the poor workmanship damage the property of another? That's the inquiry. Well, it can't be a damage. This policy is about largely working on property of another. So the fact that it's injuring property of another can't be the whole answer. But if you injure the property of another, then the reason why you have these business risk exclusions is to not – you cover property damage. And the business risk exclusions only cover bad workmanship. They only exclude that. They're not to exclude damage to another person's property, as in all this case law that I've set forth, including my Second Amendment complaint. And so you look at that and you look – once they damaged another person's property, it's irrelevant whether it's brought in contract, whether it's brought in tort, or whether it's a combination of them. You look to the nature, you look to the type of damage, and once that occurrence happened, that's an occurrence. That's an occurrence. That's like the egg before the chicken. Could I ask a question about another aspect? Yes. Are you still urging your waiver argument that the payment of the costs was a waiver? No. Okay, thank you. I'm not. Thank you, Judge Bolton. I'm not focused on that. Counsel, you have three minutes. Not focused. You're not maintaining that there was a waiver anymore. That's correct. Okay. Thank you. You have a little less than three minutes. Do you want to save any time? Yes, I'll save the remaining time. Very well. Thank you so much. Thank you. May it please the Court, good morning, Your Honors. Douglas Coladel up here, and on behalf of the insurer, Appley, in this matter. The questions from the panel this morning seem to me to indicate some troubling, trying to figure out how this might be an occurrence based on the allegations in the complaint and the damages to which. Well, it seems that if we're running off the arbitrator's complaint and the opinion in the complaint in this case, that some of what happened here was due to work that wasn't done. But some of what happened here was due to work that was badly done and that ended up affecting not only the work itself but underlying the wood in the middle in ways that, I don't know, why isn't that an accident? It wasn't intended and it isn't the work itself. It's not talking, they're not saying that you want, the problem is that you, you know, put it on bad paint. That isn't the problem. So let's back up to the genesis for the complaint which arises out of the arbitration award and the arbitrator's findings to get to the damages that were awarded for which UCI. A breach of contract, that's true. Right, and the arbitrator found that there was a breach of a service contract and failure to maintain and monitor the work that had been done. And that's where the award. Part, he said in part, but he also said that there was poor work. To the extent that there is matter beyond the, just the servicing contract and you get into damages arising out of the work that was done. Then you get into the two exclusions. The district court didn't reach those because the district court didn't find that there was any occurrence or accident to begin with. But that is correct, is it not, that the arbitrator found both that the problem was not doing the service contract and the quality of the work that was done. And if it was both, isn't that enough for us to send back? Your Honor, even if it is both, it's not enough to send back because then you look to the exclusions in this case. Both of which apply. The damage to property exclusion and also the damage to your work exclusion, which is the bad, which apply to the bad worksmanship that arose in connection with what UCI did on the property. So if you. So like Judge Berzon, when I read these exclusions, it just, it said this is excluded except if it's this. But there's two exclusions. Correct. One seems to have. Technically there's an exclusion to the exclusion. That's the one that I have a hard time getting my head around, the exclusion to J6 I think it is. But J5, the one about the work you're doing, seems to have a temporal aspect to it. It seems to be in the present tense, that J5 exclusion. And then the J6 exclusion is the one that has the completed property hazard exclusion to it. And I am having a hard time. Well, first answer, if the first exclusion has a temporal aspect to it, if it has to do with when you are doing the work as opposed to after you've completed the work. So what we have here then, Judge Bolton, is a situation where UCI is performing some work. If they did that improperly, then it fits within that temporal component of the exclusion. What Judge Bolton said and what I see as well is that that language is, seems to be applying to what's happening while you're working on it. So you have UCI performing work, that if it was done improperly. You're now using the past tense, but the J5 doesn't use the past tense, it uses the present tense. It's work that UCI is doing pursuant to the contract. While they're doing it. Right, so what they're doing, they're either painting, filling stucco. And so when they're doing that, if they do something incorrectly and it leads to property damage, which is what UCI is alleging, then that work that's being done, the bad painting, the bad stucco filling, the bad wrought iron fixing, all that is being done that is work that is excluded under J5. Well, it appears. Right, but wasn't it over? It was completed. But it, well, you're going to get to a point where you have work that is done. But if it's done incorrectly. But that's exactly what J6 says. Exactly, almost from the words that you're saying. That particular part of any property that must be restored, repaired, or replaced because of your work was incorrectly performed on it. So that's J6, it's not J5. I'm sorry, I misspoke, Your Honor. But that, under either exclusion, you have work that is being done by UCI that wasn't performed non-negligently, for lack of a better term. And so that type of work falls within the exclusions. And if you... Well, why would you have, I mean, J6 has this exception to the exception, right, for the products completed operations hazard. J5 doesn't have that because it's not about completed products. I mean, it just seems obvious that that's the case, that J5 is about if you're working on something and while you're working on something, you break something else while you're working on it. That's the language, are performing operations. Right. So then under J6, though, Your Honor, it would still fit in as an exclusion. Except there's this exception to the exception. So the question is what does that exception to the exception mean? The products completed operations hazard. I'm trying to find it. I didn't bring it up here with me. It's always a little disconcerting when the judges know the key document better than the lawyers do. But, I mean, that turns into the key question. I'm sorry, Your Honor. The key question then is what does the products, the completed products hazard thing mean? Property completed operations hazard. Products completed operations hazard. What does that mean? I'm sorry. What does the products completed operations hazard mean? Because it's an exception to J6. And J6 is the operable exclusion here. So that's where we are. Can you help us with that? So the products completed operations hazard would be a hazard as opposed to an issue with the product that was completed. The operations being the painting or the stucco repair or the wrought iron filling. So I guess the way I'm reading this, and tell me if I'm wrong, the way I'm reading this is Exclusion 6 says there are these exclusions, except that this is the exclusion to the exclusion. It says so the damage that occurs after the work was completed would not be excluded. Is that correct? Yes. All right. So that's what we have here. No, but then what we have here is not damage that occurred after the work was completed. We have damage that occurred because of the work at the time the work was being performed. So it might manifest itself later. But the issue. But the rust, the additional rust and the wood injuries occurred later because they weren't being protected. Well, you have original problems, which is why UCI is being called in to repair it. And if they do a bad repair. To me that's the interesting issue. That might be worthy of looking at carefully. Because here the question is, was this caused after the fact? Or was it caused at the time? Or was it prior? I mean, I guess that's where I'm. So you have an issue, which is why they contracted with UCI to conduct the repairs. The painting, whatever it was. And UCI goes out and does it. And they obviously do a poor job at it. So they breached that contract. And they also breached the contract where you're talking about the manifestation of the property damage later in time. They also breached the service contract where they're supposed to be monitoring and maintaining that work that they did so that you don't have an issue that arises. So it's all related to a breach of contract. It's not related necessarily to their negligent workmanship. And that's why we get back to the occurrence issue and why there's no accident. It's because they're operating under a contract. And they breached that contract. And so it's all related. All of the damages that flow from what UCI did or didn't do are attributable to the service contract and the failure to perform initially the proper work to paint, fill, and de-iron the wrought iron. But what do we do with the damage that occurs after? Because there's damage that occurs after. And that's not excluded. The damage that occurs after, again, within the occurrence penumbra, the damage that occurs after is related to the breach of the service contract. All right. The products completed operations hazard says specifically that work that may need surface maintenance, correction, repair, or replacement, which is otherwise complete, will be treated as completed. So that's the other reason that the exclusion applies, is UCI completed their work and has to- Right. And this is excluded. It's excluded if it's completed. I mean, it's excluded from the exclusion. You haven't read your own contract. It's basically what's happening here, right?  I'm just trying to get to your question. All right. The products completed operations hazard is excluded from J6, right? And part of what's excluded, because it's considered completed, is work that may need surface maintenance, correction, repair, or replacement, but is otherwise completed. So it's excluded from the exclusion, so it's in the coverage, even if it may need service maintenance, correction, repair, or replacement. So the question is, is that the correct reading? Yeah, I believe that the exclusion, as you're reading it, is an exception to the exclusion. Right. So, therefore, the surface maintenance contract doesn't seem to be pertinent because there's a specific statement that even if it needs service, but is otherwise complete, it's going to be treated as completed, meaning it's going to be within the exclusion to the exclusion.  Me neither. But the issue with regard to the ongoing service contract, Your Honor, is not work that has already been performed. That's an ongoing issue that UCI has to undertake, and that's one of the things that the arbitrator found was lacking, was their failure to maintain and monitor. So that's not... That's one of the things, but it's only one of the things. But it relates to whether the exclusion applies or the exception to the exclusion applies because that work is ongoing. It's not work past performed. Okay. So that's why the exclusion... So all of this may go maybe to what the damages are or, you know, what exactly it is you had to cover, but it doesn't go to whether there is some coverage here because some of it, it appears, is within the agreement, maybe. Well, so the first part, I think we're in agreement about the exclusion for the breach of contract for doing bad workmanship isn't an occurrence. And what I see as troubling, Your Honor, is what happened after that. And that's where, again, we get into the service contract aspect of it, which is a situation where they performed, like, let's just use painting. They painted once. And then they were supposed to maintain and monitor and make sure that if there were issues that arose with the painting, that they went and fixed it so that there wouldn't be any damage or any problems that arose after that. And that is what you get to the second part where the exclusion applies to take them out of coverage for the arbitration award damages aspect. I notice that I'm flashing, but if there's any questions. Any additional questions? No. Any additional questions? No. All right. Thank you, sir. Thank you. Thank you. Very quickly, Judge Berzon, Judge Mendoza, Judge Bolton, your questions are great. Let me get right to the heart of it. In my second amendment counterclaim, I do set forth that no work was being performed by UCI at the time the property damage in this matter occurred. That's in my complaint. Where? On page 14 of 22. But wasn't that because they weren't honoring their service agreement? But the service agreement, again, the contract itself doesn't exclude coverage. It's whether or not, again, between the work of what they did and the damage to their work and the damage to another person's property. As soon as another person's property is damaged, these business exclusions, and again, I don't think they know their policy, but these business exclusions are not applicable. Suppose the paint that they put on flakes after they leave. Does that count? That's different. Nothing happens to the wood, but the paint flakes. That's correct. That's different. That's for their product. But that's not what we're talking about. The problem with the wood is you had fungal growth, you had splitting, you had actual physical, and by the way, the star surplus lines case in Nevada goes with this line of thinking. Wasn't that expected if the work wasn't done properly? I don't think, Judge Bolton, your question is good again. I don't think there's any evidence to suggest that I'm aware of that that was expected or intended. It was just negligent. They were negligent in what they did. They didn't do a good job. But the negligence was bad paint, which flaked and didn't cover the wood properly, or in some instances they didn't paint what they were supposed to paint, apparently. And so what Judge Bolton is asking is that the flaked paint itself isn't covered, but the flaked paint was no mystery that if you don't cover something, it's going to go bad, the wood's going to go bad. I don't think the flaked paint is the issue. I understand, but the fact that it was flaked paint or that it was otherwise inadequate paint is completely predictable that wood is going to rot. Well, again, I'm not an expert, and they had expert opinion, and they came in and they testified. Obviously they had 20-plus hours, 32 hours of testimony. But, again, there's no evidence that the product that was applied, the paint product, was incorrect. We have a difference here between the product that they applied and damage to another person's property. Once you damage another person's property. Something must have been wrong with the paint if the wood rotted. There's no indication in the arbitration award that that's the case. Well, then the wood rotting must not have been their fault. If it isn't due to something wrong with the paint, then it's not their fault. He attributed that the former judge attributed as a result of their lack of proper diligence and work attributed damage to the property of another. Right, and it must be because something was wrong with the paint. Well, again, I'm not going to put words into it, but, I mean, I'm with you. I think what needed to happen here, instead of dismissing the entire action, there should have been some discovery, and we should have gone in. Judge Mendoza, you kind of talked about that. We should have gone in and said, what's potentially covered and what's not covered? Let's do some discovery and figure out. What would the discovery be about? Well, the discovery would be about, for example, the wrought iron. What exactly did they do? Had they finished their work? Had they finished their work, which we allege, because once it's finished, its products complete operations, that's when the damage occurred after it was finished. But you incorporated your expert's report into your complaint. Correct. Wasn't all of that in there? That's all of that in there. Therefore, that's all part of the complaint, all that the judge could consider. What more were you going to find out that your expert had not already found out, because he's the one that substantiated what all the damage was that were awarded by the arbitrator. And that was a little surprising to me, Judge Bolden, that the district judge didn't really comment on the expert report. No, but this is about what else were you going to discover. You already had an expert who did a complete investigation, prepared a report, and the report is part of the complaint. I think it's a timing issue. I don't know if the report is in-depth in describing the timing, and if the timing, if their work was finished and this happened, damage to another property, then according to the case law, you've got an occurrence and you've got no business exclusion. But it's confusing. This is complicated because only part of the work was finished, because there was also a service contract agreement and it wasn't finished. Well, and again, under the products completed operations, even if there is service that continues, it's finished. Well, it's a separate contract. Yeah, it seems like it's a separate contract. And again, you look to the nature of the damage, you look to all of these issues, which they didn't look to. All the court says was, oh, you've got a contract, and that's all they've argued. You've got a contract, oh, you can't, there's no occurrence. You can't get this under occurrence, and the case law is clear, you absolutely can. What strikes me is that cases just like this must arise all the time. And you don't have one, neither of you. I mean, because the problem of poor work leading to down, you know, somewhat downstream damage to something which isn't the work itself is routine, I would think. I mean, every time somebody paints something badly, you're going to have rotted wood. And I don't know why there just doesn't seem to be any case law. Or they haven't given us any. Yeah, and again, the Star Surplus Lines case, the Vandenberg case, which the Ninth Circuit has cited, this very court has cited Vandenberg in dealing with CGL policies. Does that deal with this precise problem, i.e., work that is done on a project where there, which is a breach of contract because it was poorly done, but there's injury to something other than the work itself? Vandenberg was a case where they installed storage tanks in the ground under a contract, and they did it negligently, and they were supposed to maintain them and watch them. And years later, it was found out that they leaked and they contaminated the ground. They caused injury to the property. So it's the same type of situation. You have a contract there. You have work that was being performed that was supposed to be performed. Some of it was. Some of it wasn't. And Vandenberg says, rather, the focus of the coverage for property damage is the property itself. Coverage under the CGL is not based upon the fortuity of the form of action chosen by the injured party. Determination of coverage must be individually by considering the nature of the property, the injury, and the risk that caused the injury in light of the particular provisions of each applicable clause. I don't see Vandenberg cited in your opening brief. Where is it? I'm sorry? I don't see Vandenberg cited in your opening brief. Is it cited in your brief? It is in my brief. I apologize, but it is also in my complaint. It's listed in my Second Amendment counterclaim. It is not, for some reason, Your Honor, it is in my brief, but it's not in the list of cases. I don't know how that happened. I just saw that this morning, and my apologies. That seems weird to me. But it is in my brief. And, again, Vandenberg, and I will say that as an officer of the court, the Star Surplus Lines case in Nevada, which is a 2023 case, it's not similar facts. It was a COVID case about a business trying to collect on COVID. That's not in your brief either. But the reasoning of that – I'm sorry? That doesn't seem to be in your opening brief either. Yes. I just saw that, Judge, and I wanted to bring it to your attention because it is one that – If you're going to do that, you're supposed to file a 20HA letter, and if you don't do that, you're supposed to give us a form when you come in here. I mean, how are we supposed to know anything about this case that you just told us about? I apologize, Judge, on that Star Lines case. Counsel, and it looks like you're over time. Are there any other questions? None. Thank you, Your Honor. All right. Thank you. Thank you so much. Appreciate all of you. This case, American Fire and Casualty v. Unforgettable Coatings, will be submitted.
judges: BERZON, MENDOZA, Bolton